MATTHEW A. SIROKA CASBN 233050
LAW OFFICE OF MATTHEW A. SIROKA
600 Townsend Street Suite 329E
San Francisco, California 94103
Telephone: (415) 522-1105
Facsimile: (415) 522-1506
Email:     mas@defendergroup.com

JOHN BALESTRIERE *
CRAIG STUART LANZA *
BALESTRIERE PLLC
225 Broadway
Suite 2700
New York, NY 10007
Telephone: (212) 374-5400
Facsimile: (212) 208-2613
**Attorneys for Plaintiff**

* Pro Hac Vice application pending

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| JOEL HORNSTEIN, On Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE VANGUARD GROUP, INC.,<br><br>Defendant. | Civil Case No. C 07 3239 SBA<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff, Joel Hornstein ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following, upon information and belief, except as to allegations concerning Plaintiff or his counsel, which are made upon personal knowledge,

-1-

and except as otherwise indicated herein:

## I. PRELIMINARY STATEMENT

Defendant, the Vanguard Group, Inc. ("Vanguard" or "Defendant") bills itself as a financial services company "built to put your interests first." However, through a complex tangle of paperwork and false promises, Defendant has put its *own* interests first, deceived its clients, including Plaintiff, costing investors an enormous amount of money.

1. The scheme is relatively simple: Defendant promises investors that if they use Vanguard's wire redemption services to transfer funds from Vanguard into their bank accounts, Defendant will wire those funds by *the next* business day. Defendant does not honor this promise. Instead, Defendant regularly wires those funds *two* business days after these requests.

2. Investors who believe and rely on Vanguard's promise are damaged in two ways. First, they lose one day of interest or "float" on their assets, not earning the economic return that is rightfully theirs. Over millions of clients, the interest adds up to an enormous sum of money. In addition, investors are harmed by not having funds available for business transactions on the day those funds are expected. Those investors who attempt transactions with the untransfered funds find that their transactions fail and they, in turn, lose money. In some cases, the result is not just financial loss, but reputational injury, and damage to credit, and harm to the livelihoods of hundreds. Meanwhile, day after day, Defendant accrues interest on thousands if not tens of thousands of accounts, by withholding clients' money from their own accounts, and defendant attracts new clients with the promise of services, it does not, in fact, provide.

3. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P") on behalf of himself and all similarly situated other individuals (the "Class") who, from June 19, 2004 through and including June 19, 2007 (the "Class Period"), utilized defendant, The Vanguard Group, Inc.'s ("Vanguard") same-day wire transfer services and were damaged thereby.

## Vanguard's Services

4.  Vanguard is a financial services company providing a host of services to millions of individual and institutional investors who collectively hold 22 million shareholder accounts. Vanguard's clients make investments in funds that Vanguard manages. The assets of these funds consist of securities like stocks and bonds. When investors wish to withdraw money invested in a fund, they may "redeem" their investment by selling their shares and transferring the assets. Vanguard offers three methods by which the assets may be redeemed: check (a standard check is mailed to the investor generally two days following the "trade date"), electronic funds transfer (a computer-based systems used to perform financial transactions electronically), and wire transfer (a message sent from one bank to another allowing for instantaneous availability of funds in the second bank.) Wire transfer is the quickest method and is the most common method for larger transactions.

## What Vanguard Promises

5.  Vanguard promises "same-day" and "next-day" wire transfers. Specifically, Vanguard promises that if a redemption by wire is made before a certain hour on a business day then the money from such sale will be available to the client on the same business day. If the request is made *after* that certain hour, Vanguard promises that the funds will be made available the *following* business day. In fact, a confirmation e-mail that Vanguard sends after an investor places a request for redemption by wire states, "If this sale was initiated after the close of today's business, you should receive the money in your bank account *the next business day*" (emphasis added) (Exhibit 1).

## What Vanguard Actually Does

6.  Vanguard does not do what it promises. While they clearly state that transfers will take place and fund will be available on the *following* business day, those in Plaintiff's position find that no transfer is in fact made on that anticipated date. Instead, investors like the Plaintiff experience a troubling sequence of events. Seeking to redeem

-3-

shares using Vanguard's same-day wire transfer system, they initiate a request for a wire transfer after a certain time. Vanguard confirms this request via email, and restates their policy that the transfer will be received the *next* business day. But the transfer does not go through until *two* business days later.

<u>How Vanguard Benefits</u>

7. As a result of this, Vanguard retains control of the redeemed funds for an additional day, and accrues interest on the redeemed funds. For the individual investor, the interest is usually small. In the usual case, these investors will have little incentive to complain after any one transaction. Meanwhile, Vanguard, with its hundreds of thousands of clients, making millions of transactions, accumulates over time a substantial sum through this scheme, earning little notice for its unjust enrichment. This sum is earned at the direct expense of the Class.

<u>Additional Costs to the Class</u>

8. Vanguard's misconduct additionally results in substantial loss to financial advisors and individual investors. First and foremost, all of Vanguard's investors lose the opportunity to earn interest on their assets which Vanguard unjustly misappropriates to itself. In addition, the Class has been, and continues to be, harmed in other ways.

9. Investors routinely make important decisions based on availability of funds. For financial advisors actively managing their clients' accounts, it is essential to know that funds will be available on a particular date. Individual investors face the same liquidity needs, often requiring assets immediately to fulfill personal financial obligations, such as payment of bills by on-line check. When Vanguard promises same-day or next-day wire transfer, investors and advisors expect cash in their accounts at that time, and often plan on using the money in some other way. They act in reliance on that promise, and sometimes to their detriment, instructing third-parties to draw on accounts only to find out that there are "insufficient funds."

10. During the Class Period, it is estimated that thousands – possibly tens or hundreds thousands - of individuals similarly situated to Plaintiff made wire redemptions expecting next-day availability of the funds. This estimate, based on conservative estimates as to the frequency with which Vanguard's large client base makes use of this service. This is confirmed by the fact that Vanguard responded to Plaintiff's complaints with a form letter indicating that what occurred was not an irregularity, but Vanguard's policy. This has happened many, many times, and continues to happen now.

## II. PARTIES

11. Plaintiff is an individual residing in San Francisco, California. Plaintiff runs a wealth management company, Structural Wealth Management LLC, and invests assets with Vanguard.

12. Defendant Vanguard is a corporation with its principal office located at 100 Vanguard Boulevard, Malvern, Pennsylvania.

## III. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) in that at least one member of the Class is a citizen of a State different from the Defendant named herein and the matter in controversy exceeds the sum or value of $5,000,000.

14. Venue is proper in this District because (a) at least one member of the class resides in this District; and (b) the Defendant conducts substantial business here.

## V. SUBSTANTIVE ALLEGATIONS

15. Vanguard is an investment management company that offers mutual funds and other financial products and services to individual and institutional investors in the United States and abroad. Vanguard's founder and former C.E.O., John C. Bogle, created the first index fund available to individual investors. As such, Vanguard is regarded as a company oriented towards the small investor.

16. Vanguard offers several mechanisms by which investors may redeem funds from Vanguard's financial products, one of which is a wire redemption. A wire redemption is a means of redeeming one's investments in Vanguard by wire transfer. A wire transfer is a method of electronically transferring funds from one entity to another. Wire transfers are generally done as a simple bank account transfer where the funds are transferred from Vanguard's account into the investor's account.

17. Vanguard advertises same-day and next-day wire transfers and states that if a wire transfer is made after the close of business, the funds will be available the next business day.

18. After Plaintiff made a redemption request for a wire transfer on Sunday, October 29, 2006, Plaintiff received a confirmation e-mail from Vanguard on that same date (see October 29, 2006 e-mail to Hornstein, attached hereto as Exhibit 1).

19. The e-mail stated that Plaintiff should expect the funds from the wire transfer to be available "the next business day."

20. The following business day, Monday, October 30, 2006, the proceeds from the sale were not available.

21. Plaintiff did not receive those Funds until Tuesday, October 31, 2006 – *two days* after he made the transfer.

22. Two days later, November 1, 2006, Plaintiff sent Vanguard an e-mail outlining what had just taken place.

23. Vanguard replied by letter dated Thursday, November 2, 2006, which contradicted Vanguard's previous confirmation e-mail (see November 2, 2006 Letter to Hornstein) (Exhibit 2). The letter stated that since Plaintiff had requested funds on a non-business date, the "trade date" would be Monday and the funds would only be available on Tuesday, *not* Monday. The letter explicitly stated, "Wire requests received after 4:00 p.m. . . . arrive at your bank by the close of *two business days*."

24. Plaintiff did not have funds available on Monday to make certain business

-6-

transactions and suffered a loss as a result. Relying on Vanguard's confirmation that cash would be received the next business day, Plaintiff initiated an order to purchase stocks through the brokerage firm to which the funds from the redemption of Vanguard's stocks were supposed to be wired. However, since the cash did not arrive when promised, the other brokerage firm followed standard industry protocol (required by relevant federal regulations) for an account that does not have enough cash in it: to cover the insufficient funds, it sold some of Plaintiff's holdings via a "market order", an order type that yields an immediate sale, but at a price generally less than what would be achieved in am ore deliberate sale. Beyond the poor price received (on a stock that Plaintiff did not want to sell at all, and which has risen substantially since), this sale caused Plaintiff to recognize short-term capital gains (financial gains taxed at a higher rate, which sophisticated tax-sensitive investors seek to avoid) and to incur brokerage commission costs.

25. Had Plaintiff been told that the redemption date was Monday and that the funds would not be available until Tuesday, Plaintiff would have contacted Vanguard on Monday and again utilized Vanguard's same day wire transfer service. In that event, the funds would have been available on Monday. Alternatively, Plaintiff would not have purchased stock at the other brokerage firm until Tuesday, so as to avoid the forced liquidation that in fact resulted.

## VI. CLASS ACTION ALLEGATIONS

26. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in his representative capacity on behalf of himself and a class (the "Class") of all persons similarly situated, defined as follows:

> All individuals who used Vanguard's next-day wire redemption service and did not receive the wire transfer until two days later, during the period from June 19, 2004 to June 19, 2007.

27.    This action meets the following prerequisites of Rule 23(a) by which Plaintiff may bring this action on behalf of the Class:

    a. Numerosity. The Class consists of individuals who utilize Vanguard's wire services and are sent a confirmatory response which indicates that their funds will be available the next day. Vanguard manages over $1.1 trillion dollars in assets, manages over 20 million investor accounts, and has over eight million shareholders. Unquestionably, the number of individuals affected is so large that joinder of all members as individual plaintiffs is impracticable.

    b. Commonality. There are questions of law and fact common to the Class. Such common questions include, but are not limited to:

        (i) Did Vanguard indicate to investors that it would wire assets next-day at the latest?

        (ii) Did Vanguard fail to wire assets until two business days following after-hours wire transfer requests?

        (iii) Did Vanguard intentionally send out false confirmatory e-mails and fail to change these even after clients had complained to Vanguard that these e-mails were misleading?

        (iv) Was it reasonable for Vanguard's clients to forego use of the same day service option because of their belief that Vanguard would fulfill its promise to wire the funds on time?

        (v) Did Vanguard improperly accrue an additional day of interest as a result of its failure to wire funds in the time period specified?

        (vi) Have Class members been damaged through additional costs such as unintended capital gains, unplanned brokerage commissions, lost gains on securities Class members did not wish to sell to cover insufficient funds in their accounts, financial institution fees due to insufficient funds,

and harm to reputation and present and future business relationships due to not engaging in conduct promised to others – such as making trades – due to the lack of funds in their accounts?

c. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff is an average Vanguard customer who made an average wire transfer and was misled and harmed by Vanguard's standard misrepresentations.

d. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiff has engaged competent counsel experienced in class actions and complex litigation.

e. Maintainability. This action is properly maintainable as a class action for the prior independent reasons and under the following portions of Rule 23:

    (i) The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(l)(B).

    (ii) The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Fed. R. Civ. P. 23(b)(2).

    (iii) Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## VII. CAUSES OF ACTION

*Hornstein v. The Vanguard Group, Inc C.*
CLASS ACTION COMPLAINT

### First Cause of Action: Deceit

28. California Civil Code § 1710 defines deceit, in relevant part, as the suppression of a fact by one who gives information or other facts which are likely to mislead for want of communication of that fact. Vanguard suppressed the fact that wire transfers after 4 p.m. would take two full business days to complete, and supplied other facts stating or tending to convey the impression that the transfers would occur on the next business day.

### Second Cause of Action: Fraud

29. Intending to induce the Class to take advantage of its services, Vanguard knowingly suppressed the truth and suggested as fact that the transactions would occur on the next business day, knowing that it would take two full business days. Plaintiffs relied on this omission to their detriment. Cal. Civ. Code § 1572.

### Third Cause of Action: Negligent Misrepresentation

30. Vanguard represented that they made same-day or next-day wire transfers, when in reality, some of Vanguard's wire transfers took days. Plaintiff and Class relied on Vanguard's statements and used Vanguard's services. Defendant knew the falsity of the representation, but suggested that next-day wire transfers were available in order to attract business. The Class justifiably relied on the various representations, and their injuries are the proximate result. Vanguard, meanwhile, was able to gain the interest that accrued.

### Fourth Cause of Action: Breach of Contract

31. Vanguard repeatedly promised its investors that they would make same-day and next-day wire redemptions. From their Prospectuses to the e-mail confirmations they sent out, Vanguard indicated in a series of documents that wire transfers would always take place – at the latest – on the next business day. Plaintiff and the Class accepted those terms by choosing to utilize Vanguard's services to make wire redemptions. Vanguard breached the contract by not providing the funds for a full two days later.

### Fifth Cause of Action: Promissory Estoppel

32. Vanguard made a promise which can reasonably be expected to have caused Plaintiff's reliance, namely that the funds would be available the next business day. The promise did, in fact, induce such action: Plaintiff and Class relied on Vanguard's statements to their detriment and did not receive the funds the following day, and lost the opportunity to use the funds to earn interest and conduct business transactions.

### Sixth Cause of Action: Violation of California Business & Professional Code § 17200

33. Vanguard's false claim that they provided next-day wire transfers in all cases constitutes an unlawful business practice within the meaning of § 17200. Vanguard's claims are unfair, deceptive, untrue, and misleading, perpetrating a fraud on the public.

### Seventh Cause of Action: Violation of California Business & Professional Code § 17500

34. Vanguard induced its clients to enter into a transaction – utilization of Vanguard's services – by means of an untrue and misleading statement: the claim that Vanguard provided same-day and next-day wire transfers. In addition, Vanguard knew this, since it is their policy to do so.

### Eighth Cause of Action: Conversion

35. The Class expected that their assets would be transferred on the next business day. As a result of Vanguard's promises, the Class had an immediate right of possession on the next business day. However, Defendant wrongfully maintained the Class's property in a manner inconsistent with the Class's right of dominion over their own assets. Defendant did so intentionally and knowingly, and proximately caused financial harm to the Class.

### VIII. PRAYER FOR RELIEF

WHEREFORE, on his own behalf and on behalf of the Class, Plaintiff demands judgment as follows:

A. An Order determining that this action is a proper class action maintainable under Federal Rule 23;

B. An Order that Defendant cease making the misrepresentations that continue to damage members of the Class and others;

C. Costs and disbursements incurred by Plaintiff in connection with this action;

D. Restitution and damages in an amount to be determined at trial;

E. Attorneys' fees and costs of suit; and

F. Such other and further relief as the Court deems just and proper.

## IX. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury with respect to all issues so triable.

DATED:   June 19, 2007.

Respectfully submitted,

*/s/ Matthew Siroka*

Matthew Siroka

**LAW OFFICE OF MATTHEW SIROKA**
600 Townsend Street Suite 329E
San Francisco, California 94103
Telephone: (415) 522-1105
Facsimile: (415) 522-1506

John Balestriere
Craig Stuart Lanza
**BALESTRIERE PLLC**
225 Broadway
Suite 2700
New York, NY 10007
Telephone: (212) 374-5400
Facsimile: (212) 208-2613
*Attorneys for the Plaintiff*

Exhibit 1

**Flagship Investors**          Open an account | Log off | Forms | Site help      [Search]



Questions? Contact your representative, Sarah W Wargo

Home   **My Portfolio**   Research Funds & Stocks   Account Types & Services   Planning & Education   Buy & Sell

Overview   Accounts & Activity   Portfolio Watch   Performance   Statements   Account Options   › **My Messages**   My Profile

My Portfolio » My Messages » Message Details

## Your redemption by wire is being processed

Your request for the sale of shares by wire is being processed. If this sale was initiated after the close of today's business you should receive the money in your bank account the next business day. You can view this transaction in Accounts & Activity the business day after the sale is processed.

**Transaction details**

| | |
|---|---|
| Account | Joel D Hornstein |
| From fund and account | 0011-88008982346 |
| Assets transferred to bank | CITIBANK, N.A. |

Posted on 10/29/2006 02:34 PM                    Go to My Messages »

© 1995–2006 The Vanguard Group, Inc. All rights reserved. Vanguard Marketing Corp., Distrib. Terms & conditions of use | Obtain prospectus

Exhibit 2

**Flagship Investors**  Open an account | Log off | Forms | Site help    Search


Vanguard®

Questions? Contact your representative, Sarah W Wargo

Home   **My Portfolio**   Research Funds & Stocks   Account Types & Services   Planning & Education   Buy & Sell

Overview   Accounts & Activity   Portfolio Watch   Performance   Taxes & Income   Statements   Account Profile   › My Messages

My Portfolio » My Messages » Message Details

## Vanguard's response to your secure e-mail

Subject    Re:Re: I am livid

Posted date    Thu Nov 02 16:55:45 EST 2006

Dear Mr. Hornstein:

Thank you for your e-mail regarding your recent wire. I am responding on behalf of your Flagship representative, Sarah Wargo.

Our records indicate that the wire transaction was initiated on Sunday which is a nonbusiness day. Thusly, the wire would receive Monday's trade date and the assets would arrive by the close of business on Tuesday.

In the future, please contact Vanguard to initiate a same day wire. Wire redemptions requested online before 4 p.m. Eastern Time receive that day's trade date and are transferred to the bank by close of business the following business day. Same day wires can be processed from money markets by calling the number below before 10:45 a.m. Eastern Time (2:00 p.m. for the Prime Money Market). Telephone wire redemptions requested after 10:45 a.m. (2:00 p.m. for the Prime Money Market) but before 4:00 p.m. arrive at your bank by close of business the next business day. Wire requests received after 4:00 p.m. receive the following business day's trade and arrive at your bank by the close of two business days.

Unfortunately, we have no immediate plans to change our wire process and will not be able to reimburse any monies, we appreciate you taking the time to share your comments regarding this matter and we have forwarded your feedback to our management team for review. Vanguard strives to offer quality and informative services you need to effectively manage your investments. Through your recommendations, we can enhance and add more services to meet your needs.

I have forwarded a copy of this e-mail to your representative. If you have any further questions, you may contact Sarah at 1-800-345-1344, extension 8672. If your representative is unavailable at the time of your call, the next available trained representative will be happy to assist you. If you prefer, you may ask to be transferred to Sarah's voice mail. She will promptly return your call.

Flagship's business hours are Monday to Friday from 8 a.m. to 10 p.m. and Saturdays from 9 a.m. to 4 p.m. Eastern time. You may also feel free to visit our website at www.vanguard.com, 24 hours a day, 7 days a week.

Sincerely,

Arlene Blocker
Registered Representative
Vanguard Flagship Service

© 2006 The Vanguard Group, Inc. All rights reserved. Vanguard Marketing Corporation, Distributor.

Vanguard funds are offered by prospectus only. Prospectuses contain more