Connie E. Merriett (SB# 223274)
connie.merriett@dechert.com
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040
Telephone: (650) 813–4800
Facsimile: (650) 813–4848

Michael S. Doluisio (*Admitted pro hac vice*)
Scott A. Thompson (*Admitted pro hac vice*)
DECHERT LLP
2929 Arch Street, Cira Centre
Philadelphia, PA 19104
Telephone: (215) 994–4000
Facsimile: (215) 655–2325

Attorneys for Defendant
The Vanguard Group, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOEL HORNSTEIN, On Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE VANGUARD GROUP, INC.,<br><br>Defendant. | Case No. C–07–3239 SBA<br><br>**THE VANGUARD GROUP INC.'S MOTION TO DISMISS**<br><br>Date: October 23, 2007<br>Time: 1:00 p.m.<br>Courtroom: 3<br>Judge: Hon. Saundra Brown Armstrong |

**TABLE OF CONTENTS**

**Page**

I. NOTICE OF MOTION ................................................................................................... 1
II. RELIEF SOUGHT .......................................................................................................... 1
III. MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1
INTRODUCTION ........................................................................................................................ 2
STATEMENT OF THE ISSUE ................................................................................................... 2
OVERVIEW OF THE ALLEGATIONS ..................................................................................... 2
ARGUMENT ................................................................................................................................ 5
    I. STANDARD OF REVIEW ............................................................................... 5
    II. PLAINTIFF'S CLAIMS ARE PREEMPTED BY SLUSA ................................ 6
        A. SLUSA Was Enacted To Preclude Cases Like This One. .......................... 6
        B. Plaintiff's Suit is a "Covered Class Action" Under SLUSA ...................... 7
        C. Plaintiff's Suit is Based on State Law ......................................................... 8
        D. The Vanguard Securities at Issue are "Covered Securities." ..................... 8
        E. Plaintiff Alleges Misrepresentations ........................................................... 9
        F. The Alleged Misrepresentations Were Made "In Connection With" Both the Sale and Purchase of Vanguard Securities ................................... 9
            1. "In Connection With" Must Be Read Broadly ............................... 9
            2. The Alleged Fraud Is "In Connection With" Investors' Sales of Vanguard Funds ................................................................ 10
            3. The Alleged Fraud Is Also "In Connection With" Investors' Purchases of Vanguard Funds ..................................... 12
        G. All of Plaintiff's Claims Are Preempted ................................................... 12
CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abrego Abrego v. The Dow Chem. Co.,
    443 F.3d 676 (9th Cir. 2006) ................................................................................. 3, 5

Araujo v. John Hancock Life Ins. Co.,
    206 F. Supp. 2d 377 (E.D.N.Y. 2002) ....................................................................... 12

Bell Atlantic Corp. v. Twombly,
    127 S.Ct. 1955 (2007) ............................................................................................... 6

Epstein v. Washington Energy Co.,
    83 F.3d 1136 (9th Cir. 1996) ..................................................................................... 6

Everest & Jennings, Inc. v. American Motorists Ins. Co.,
    23 F.3d 226 (9th Cir. 1994) ....................................................................................... 6

Falkowski v. Imation Corp.,
    309 F.3d 1123 (9th Cir. 2002) ................................................................. 7, 10, 11, 12

Kenneth Rothschild Trust v. Morgan Stanley Deal Witter,
    199 F. Supp. 2d 993 (C.D. Cal. 2002) .............................................................. 8, 9, 11, 13

Lasley v. New England Variable Life Ins. Co.,
    126 F. Supp. 2d 1236 (N.D. Cal. 1999) .................................................................... 13

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
    547 U.S. 71 (2006) ..................................................................................... 2, 7, 9, 10, 12

Parrino v. FHP, Inc.,
    146 F.3d 699 (9th Cir. 1998) ..................................................................................... 4

Patenaude v. Equitable Life Assurance Soc'y,
    290 F.3d 1020 (9th Cir. 2002) ............................................................................. 7, 13

Winne v. Equitable Life Assurance Soc'y,
    315 F. Supp. 2d 404 (S.D.N.Y. 2003) ...................................................................... 11

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 3, 4, 6

Private Securities Litigation Reform Act ................................................................... 7

Securities Litigation Uniform Standards Act of 1998 ..................................... *passim*

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ................................................................................ 6. 13

Cal. Bus. & Prof. Code § 17500 ................................................................................ 6, 13

**I.    NOTICE OF MOTION**

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 1:00 p.m., on October 23, 2007, or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California, Defendant The Vanguard Group, Inc. ("Vanguard") will move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint filed by plaintiff Joel Hornstein.

This motion is supported by Vanguard's Memorandum of Points and Authorities in Support of this Motion, the declaration of Connie E. Merriett in support hereof and the exhibit thereto, all pleadings on file with the Court, any reply memoranda that may be filed, the argument of counsel, and any other support that may be presented at the time of the hearing. A proposed order granting the motion is filed herewith.

**II.    RELIEF SOUGHT**

Vanguard seeks an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the Complaint with prejudice. This motion is brought on the grounds that the Complaint fails as a matter of law because plaintiff purports to bring a class action alleging state law claims relating to misrepresentations concerning the purchase or sale of securities and thus the entire Complaint is preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

**III.    MEMORANDUM OF POINTS AND AUTHORITIES.**

Vanguard respectfully submits this memorandum of points and authorities in support of its motion to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Plaintiff Joel Hornstein ("Hornstein" or "plaintiff") brings this state law action on behalf of a putative class of Vanguard investors who plaintiff alleges have been injured by using Vanguard's wire redemption service. Plaintiff contends that Vanguard devised a "scheme" whereby it represented to investors that "if they use Vanguard's wire redemption services to transfer funds from Vanguard into their bank accounts, [Vanguard] will wire those funds by *the next* business day" but that, in actuality, Vanguard "regularly wires those funds *two* business days

1  after the requests." Complaint ¶1 (emphasis in original). Plaintiff alleges that, by holding the
2  funds for one additional day, Vanguard earns interest on the funds, while investors are deprived
3  of the opportunity to earn one additional day of interest. Id. ¶2. Even if Hornstein's allegations
4  were true – and they are not – he fails to state a claim as a matter of law.

5  Each of plaintiff's eight state law causes of action is expressly preempted by the Securities
6  Litigation Uniform Standards Act of 1998 ("SLUSA"). Under SLUSA, an investor may not
7  maintain a state law class action alleging an untrue statement or omission made in connection
8  with the purchase or sale of a security. See 15 U.S.C. § 77p(b). Here, plaintiff alleges that
9  Vanguard made misrepresentations that both coincided with his sale of Vanguard securities *and*
10 induced investors to purchase Vanguard securities in the first instance. Therefore, plaintiff's
11 claims fall squarely within the broad scope of SLUSA preemption. See, e.g., Merrill Lynch,
12 Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006). Accordingly, the Court should
13 dismiss plaintiff's entire Complaint.

14 **STATEMENT OF THE ISSUE**

15 Should the Complaint be dismissed under Fed. R. Civ. P. 12(b)(6) pursuant to the
16 Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77p(b), because plaintiff
17 purports to bring a state law class action alleging misrepresentations in connection with the
18 purchase and sale of Vanguard securities?

19 **OVERVIEW OF THE ALLEGATIONS**

20 This case is brought by Joel Hornstein. Hornstein is a sophisticated investor. He "runs a
21 wealth management company, Structural Wealth Management, LLC, and invests assets with
22 Vanguard." Complaint ¶11.

23 Plaintiff alleges that "Vanguard is an investment management company that offers mutual
24 funds . . . to individual and institutional investors . . . ." Id. ¶15. He further alleges that
25 Vanguard investors can redeem (i.e., sell) their mutual fund shares and elect to have the proceeds
26 wired to their bank accounts. Id. ¶¶4, 16.

27 Hornstein alleges that, "through a complex tangle of paperwork and false promises,
28 [Vanguard] has . . . deceived its clients, including Plaintiff, costing investors an enormous amount

1  of money." Id. at 2 (Preliminary Statement). Specifically, Plaintiff alleges that Vanguard
2  engages in a "scheme" whereby it "promises investors that if they use Vanguard's wire
3  redemption services to transfer funds from Vanguard into their bank accounts, [Vanguard] will
4  wire those funds by *the next* business day." Id. ¶1 (emphasis in original). In particular,
5  "Vanguard promises that if a redemption by wire is made before a certain hour on a business day
6  then the money from such sale will be available to the client on the same business day. If the
7  request is made *after* that certain hour, Vanguard promises that the funds will be made available
8  the *following* business day." Id. ¶5 (emphasis in original).

9  Plaintiff generally alleges that Vanguard made "false promises" regarding the redemption
10 service "in order to attract business" and to induce investors to use the redemption service. Id. at
11 2; ¶¶29, 30. Hornstein claims that he made a redemption request on a Sunday, and that Vanguard
12 falsely promised that he would receive the redemption proceeds on Monday. He claims that these
13 false promises appeared in two documents: (1) the Prospectus; and (2) an October 29, 2006
14 "confirmation e–mail" that Vanguard sent to Hornstein after he made his redemption request. Id.
15 ¶ 31. But neither of these documents provides that an investor – like Hornstein – who makes a
16 redemption request through Vanguard's client website on a *Sunday* will receive the redemption
17 proceeds on Monday. See id. at ¶18 ("Plaintiff made a redemption request for a wire transfer on
18 Sunday, October 29, 2006 . . . ."); id. at Ex. 1 (demonstrating that plaintiff made his redemption
19 request at 2:34 p.m. on Sunday, October 29, 2006).

20 Rather, the Prospectus clearly discloses that redemption requests are not processed over
21 the weekend.[1] (Of course, this makes sense, because the markets are closed.) Specifically, the
22 Prospectus provides that the price of a fund share is called the Net Asset Value ("NAV") and that
23 the NAV "is calculated each *business* day as of the close of regular trading on the New York
24 Stock Exchange." See Vanguard Money Market Funds Prospectus dated December 23, 2005
25 ("Prospectus") at 18 (emphasis added), Exhibit A to Declaration of Connie E. Merriett ("Ex. A").

---

[1] Documents other than the Complaint are properly considered in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the document's "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. See Parrino v. FHP, Inc., 146 F.3d 699, 705–06 (9th Cir. 1998), superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006).

1   With regard to redemptions, the Prospectus makes clear that redemption requests are *not*
2   processed over the weekend and that redemptions occur only at the fund's *next–determined* NAV.
3   See id. at 18 ("On holidays or other days when the [New York Stock] Exchange is closed, the
4   NAV is not calculated, and the Fund does not transact purchase or redemption requests."); id. at
5   26 ("You redeem shares at a fund's next–determined NAV after Vanguard receives your
6   redemption request . . . .").

7   The Prospectus also clearly discloses when redemption proceeds will leave Vanguard.
8   For investors (like Hornstein) who seek to obtain redemption proceeds by wire, the Prospectus
9   makes clear that proceeds will leave Vanguard by the close of business on the "same day" only if
10  the investor has made a "telephone request" to Vanguard prior to 10:45 a.m. on a business day.
11  All other requests made on a business day before 4 p.m. will result in the proceeds being sent "by
12  the close of business on the following business day:"

> For telephone requests received by Vanguard before 10:45 a.m.,
> Eastern Time . . . the redemption proceeds will leave Vanguard by
> the close of business that same day. For other requests received
> before 4 p.m., Eastern time, the redemption proceeds will leave
> Vanguard by the close of business on the following business day.

16  Id. at 25. Thus, the Prospectus makes clear that redemptions are not processed on weekends, and
17  that an investor like Hornstein who requested a redemption through Vanguard's website on a
18  Sunday would receive the "next–determined NAV" (Monday) and his redemption proceeds would
19  "leave Vanguard by the close of business on the following business day" (Tuesday).

20  The October 29, 2006 "confirmation e–mail" likewise does not support plaintiff's claims.
21  Even if this confirmatory message could reasonably be read to alter the detailed disclosures of the
22  Prospectus, the message does no such thing. It provides: "If this sale was initiated after the close
23  of today's business, you should receive the money in your bank account the next business day."
24  See Complaint at Ex. 1. Thus, by its own terms, the message provides only that redemption
25  proceeds will be sent the next day "*if*" a redemption request was "initiated after the close of
26  *today's business* . . . ." Id. (emphasis added). The message itself makes clear that plaintiff
27  initiated the sale at 2:34 p.m. on Sunday, October 29, 2006 – a non–business day. Id. Thus, as
28  Vanguard later explained to Hornstein in writing, because plaintiff initiated his sale on Sunday, a

1  non–business day, the trade date for the sale was Monday, October 30, 2006, and Vanguard sent

2  the redemption proceeds on Tuesday, October, 31, 2006, the following business day. See id. at

3  Ex. 2.

4  Despite his failure to identify any representation by Vanguard that a Sunday redemption

5  request will result in redemption proceeds leaving Vanguard on Monday, Hornstein faults

6  Vanguard for "regularly" wiring redemption proceeds "*two* business days after these requests."

7  Id. ¶1 (emphasis in original). Worse yet, plaintiff claims that, "as a result of this [delay],

8  Vanguard retains control of the redeemed funds for an additional day, and accrues interest on the

9  redeemed funds." Id. ¶7. Specifically, Hornstein claims that because Vanguard has "hundreds of

10 thousands of clients, making millions of transactions," Vanguard "accumulates over time a

11 substantial sum through this scheme." Id. ¶7. Hornstein also alleges that investors are injured by

12 the loss of interest for the additional time Vanguard retains their funds. Id. ¶8. These allegations

13 are demonstrably false.[2]

14 Based on these allegations, Hornstein purports to bring this action on behalf of a class

15 comprising "[a]ll individuals who used Vanguard's next–day wire redemption service and did not

16 receive the wire transfer until two days later, during the period from June 19, 2004 to June 19,

17 2007." Id. ¶26. He asserts eight separate causes of action for: deceit, fraud, negligent

18 misrepresentation, breach of contract, promissory estoppel, violations of Cal. Bus. & Prof. Code

19 §§17200 & 17500, and conversion. Id. ¶¶28–35. He seeks restitution and damages, as well as

20 other costs and fees. Id. at 11–12. As discussed below, the Court should dismiss the entire

21 Complaint because all of plaintiff's state law claims are expressly preempted by SLUSA.

## ARGUMENT

### I.   STANDARD OF REVIEW

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint is

construed in the light most favorable to the plaintiff and all properly pleaded factual allegations

---

[2] As the Prospectus makes clear, investors who (like Hornstein) make a redemption request over the internet continue to earn dividends "until the business day following your trade date." See Prospectus at 26, Ex. A. Thus, even if Hornstein's shares were not redeemed for one additional day, he – not Vanguard – earned additional money as a result. In light of the clear disclosure in the Prospectus, it is unclear what basis Hornstein could have for his unfounded claims. See Federal Rule of Civil Procedure 11.

1 are taken as true.  See Everest & Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228
2 (9th Cir. 1994).  However, "conclusory allegations of law and unwarranted inferences are
3 insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Washington
4 Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).  The motion should be granted if the plaintiff is
5 unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell
6 Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960 (2007).

## II.     PLAINTIFF'S CLAIMS ARE PREEMPTED BY SLUSA

SLUSA precludes plaintiffs from bringing state law class actions that allege misrepresentations in connection with the purchase or sale of securities.  Plaintiff's claim – that Vanguard made representations about the payment of redemption proceeds that induced him and putative class members to purchase shares, and influenced when they would initiate redemptions – is exactly the kind of claim preempted by SLUSA.  The Court should therefore dismiss the entire Complaint.

### A.     SLUSA Was Enacted To Preclude Cases Like This One.

The history of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77x–1, and SLUSA makes clear that Congress sought to preclude cases just like this case.  In 1995, Congress passed the PSLRA "because it was distressed with the proliferation and cost of allegedly meritless federal securities class actions." U.S. Mortgage, Inc. v. Saxton, – F.3rd –, CIV. A. No. 04–17494, 2007 WL 2027370, at *5 (9th Cir. July 13, 2007).  The PSLRA "sought to curb abusive and frivolous securities suits by imposing new procedural and substantive requirements" on plaintiffs, including heightened pleading requirements for class actions alleging fraud. Id.

The PSLRA was not fully successful.  As the Supreme Court has explained, Congress's effort to curb frivolous federal lawsuits had an "unintended consequence:  It prompted at least some members of the plaintiff's bar to avoid the federal forum altogether." Dabit, 547 U.S. at 82. Specifically, rather than facing the heightened pleading requirements mandated by the PSLRA, "plaintiffs and their representatives began bringing class actions under state law, often in state court." Id.

In response, Congress enacted SLUSA in 1998 to restrict frivolous state law "strike suits." Patenaude v. Equitable Life Assurance Soc'y, 290 F.3d 1020, 1026 (9th Cir. 2002). As the Court of Appeals for the Ninth Circuit has noted, SLUSA was enacted to stem the circumvention of "congressional reforms designed to restrict federal securities claims" by providing for the dismissal of certain state law class actions. Falkowski v. Imation Corp., 309 F.3d 1123, 1128–30 (9th Cir. 2002), amended by 320 F.3d 905 (2003). SLUSA provides in pertinent part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p; id. § 78bb(f)(1)–(2).

SLUSA preempts any claim that is: (1) made in a "covered class action;" (2) based on state law; and (3) alleges an untrue statement or omission of material fact or manipulative or deceptive device or contrivance; (4) made "in connection with" the purchase or sale; of (5) a "covered security." Madden v. Cowen & Co., No. 06–04886, 2007 WL 781780, at *4 (N.D. Cal. 2007). Here, each of the conditions for SLUSA preemption is easily met.

**B.  Plaintiff's Suit is a "Covered Class Action" Under SLUSA.**

Plaintiff's suit is indisputably a "covered class action." Under SLUSA, a "covered class action" includes actions in which "damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to . . . members of the prospective class . . . predominate over any questions affecting only individual persons or members." 15 U.S.C. § 77p(f)(2)(A)(i)(I); id. § 78bb(f)(B)(i)(I). Here, plaintiff alleges that the putative class comprises "thousands – possibly tens or hundreds thousands [sic]" of individuals. See Complaint ¶10. He also alleges that "[q]uestions of law and fact common to members of the Class predominate over any questions affecting only individual members . . . ." Id. at ¶27(e)(iii).

1  Accordingly, the suit is a "covered class action."[3]

2  ### C.  Plaintiff's Suit is Based on State Law.

3  Plaintiff's suit is clearly based on state law. Plaintiff alleges eight causes of action, each
4  of which arises under state common law or California statute. Thus, this element is easily met.

5  ### D.  The Vanguard Securities at Issue are "Covered Securities."

6  SLUSA defines a "covered security" as "a security that satisfies the standards for a
7  covered security specified in paragraph (1) or (2) of section 77r(b) of this title." 15 U.S.C.
8  § 77p(f)(3). Section 77r(b), in turn, defines a "covered security" as "either registered securities
9  listed on national exchanges or securities issued by 'an investment company that is registered . . .
10 under the Investment Company Act of 1940.'" Kenneth Rothschild Trust v. Morgan Stanley Deal
11 Witter, 199 F. Supp. 2d 993 (C.D. Cal. 2002) (quoting 15 U.S.C. § 77r(b)(1) and (2)).

12 Here, plaintiff refers to the securities at issue generally as "shares" of "mutual funds"
13 managed by Vanguard. Complaint ¶¶4, 15. Moreover, Exhibit 1 to the Complaint discloses that
14 Plaintiff redeemed shares of Fund 11, which is the Vanguard Admiral Treasury Money Market
15 Fund. Id. at Ex. 1; Prospectus at 10, Ex. A (identifying Fund 11 as Vanguard Admiral Treasury
16 Money Market Fund). Those shares are indisputably issued by an investment company that is
17 "registered under the Investment Company Act of 1940." See Prospectus at 34, Ex. A
18 (identifying the Investment Company Act filing number for Vanguard Admiral Treasury Money
19 Market Fund). Accordingly, the money market fund shares at issue constitute "covered
20 securities." See, e.g., Rothschild, 199 F. Supp. 2d at 1000 (holding that shares of money market
21 fund are "covered securities" under SLUSA).

22 / / /
23 / / /
24 / / /
25 / / /

---

[3] This action additionally falls within SLUSA's secondary definition of "covered class action" because it is an action in which "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members." 15 U.S.C. § 77p(f)(2)(A)(i)(II); id. § 78bb(f)(B)(i)(II).

### E. Plaintiff Alleges Misrepresentations.

Plaintiff alleges misrepresentations by Vanguard. For example, plaintiff alleges that Vanguard engaged in a "scheme" whereby it: made "false promises;" sent out "false confirmatory e–mails;" "knowingly suppressed the truth;" "knew the falsity of the representation;" and made an "untrue and misleading statement." See Complaint at Preliminary Statement; ¶¶27(b), 29, 30, 34. Plaintiff also alleges that Vanguard "deceived its clients" and that he was personally "misled . . . by Vanguard's standard representations." See Complaint at Preliminary Statement; ¶27(c). He further alleges that Vanguard's "claims [regarding its wire redemption service] are . . . deceptive, untrue, and misleading, perpetrating a fraud on the public." Id. ¶33. As a result, Hornstein has sued Vanguard for, among other things, deceit, fraud, and negligent misrepresentation. As such, it is clear that plaintiff's Complaint is based upon alleged misrepresentations.

### F. The Alleged Misrepresentations Were Made "In Connection With" Both the Sale and Purchase of Vanguard Securities.

In the Complaint, plaintiff describes two aspects of Vanguard's alleged fraud: First and most centrally, plaintiff alleges that investors were misled regarding when they would receive proceeds upon a sale of fund shares. Second, plaintiff alleges that investors were induced into buying Vanguard funds in the first instance by misrepresentations concerning Vanguard's wire redemption process. Plaintiff thus alleges misrepresentations "in connection with" both investors' sales and original purchases of Vanguard funds.

#### 1. "In Connection With" Must Be Read Broadly

In Dabit, the Supreme Court recently held that the plaintiff alleged fraud "in connection with" the purchase and sale of securities, even though he purported to represent a class of brokers who merely held, i.e., "owned and continued to own," securities. Dabit, 547 U.S. at 1508. The Court noted that it "has espoused a broad interpretation" of the "in connection with" requirement and that, to satisfy the requirement, "it is enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else." Id. at 1513 (citing United States v. O'Hagan, 521 U.S. 642, 651 (1997)). The Dabit Court explained that Congress

1  must have "envisioned [this] broad construction" in light of SLUSA's goal of "prevent[ing]
2  certain State private securities class action lawsuits alleging fraud from being used to frustrate the
3  objectives [of the PSLRA]." Id. (quoting SLUSA, Pub. L. No. 105–353, § 2(5), 112 Stat. 3227
4  (1998)).

5  The Ninth Circuit has followed the Supreme Court's lead in interpreting the "in
6  connection with" requirement broadly. See U.S. Mortgage, 2007 WL 2027370, at *8 (noting the
7  "expansive view" set forth in Dabit and holding that plaintiffs' claims were preempted where
8  plaintiffs "alleged fraud that '[c]oincides' with the purchase or sale of securities" even though
9  "plaintiffs themselves did not purchase or sell any of the [securities]"); Falkowski, 309 F.3d at
10 1131 ("in connection with" standard "looks for a relationship in which the fraud and the stock
11 sale coincide or are more than tangentially related").

### 2. The Alleged Fraud Is "In Connection With" Investors' Sales of Vanguard Funds

14 Under this broad standard, the fraud plaintiff alleges unquestionably is "in
15 connection with" with the sale of Vanguard securities. Plaintiff's claims center on Vanguard's
16 alleged misrepresentations regarding when redemption proceeds would be received upon the sale
17 of fund shares. Specifically, plaintiff alleges misrepresentations concerning both the value and
18 timing of the redemption proceeds sent to sellers of Vanguard funds. See Complaint ¶¶2, 7, 31.
19 Thus, the alleged fraud clearly "'coincide[s]' with" investors' sales of Vanguard funds. Dabit,
20 547 U.S. at 1513.

21 The Ninth Circuit's decision in Falkowski is instructive. In that case, plaintiffs alleged
22 that the defendant fraudulently concealed an accounting charge and thereby misrepresented the
23 nature of the stock options plaintiffs received as part of defendant's acquisition of plaintiffs'
24 employer. Falkowski, 309 F.3d at 1126–27. The Ninth Circuit affirmed the dismissal of the case
25 under SLUSA because the alleged fraud was "in connection with" the sale of the stock options to
26 plaintiffs insofar as the fraud concerned both (1) "the value of options" and (2) the "time period
27 during which [the plaintiffs] could exercise their rights to purchase." Id. at 1131. The Court of
28 Appeals explained:

> Representations about the value of the stock and the terms on which the plaintiffs will be able to purchase the stock are properly subject to uniform federal standards, and allegations of intentional misconduct in such representations must clearly be stated to avoid abuse.

Id. (internal citations omitted).

The court's decision in Beckett v. Mellon Investor Services, LLC, No. 06–5245 FDB, 2006 WL 3249189, at *1 (W.D. Wash. Nov. 8, 2006), is also on point. In Beckett, the court recognized that allegations concerning redemption proceeds are "in connection with" the sale of securities. In that case, the plaintiff claimed that when he sold his stock, Mellon charged unauthorized transaction and service fees that reduced the amount of the sale proceeds. Id. at *3. He brought suit under theories of state law breach of contract, breach of fiduciary duty, unjust enrichment, and for violations of the state Consumer Protection Act. Id. at *1. The district court dismissed the complaint under SLUSA, explaining that "[t]he allegation of charging undisclosed fees and paying Plaintiff share proceeds below prevailing market prices is an allegation of a misrepresentation or omission of material fact concerning the terms of the sale of stocks." Id. at *4–5; see also Rothschild, 199 F. Supp. 2d at 1003 (misrepresentations regarding the amount of interest to be received during time period that plaintiff was invested in a money market mutual fund fall "squarely within the definition of 'in connection with the sale or purchase of securities'"); Winne v. Equitable Life Assurance Soc'y, 315 F. Supp. 2d 404, 413 (S.D.N.Y. 2003) (dismissing under SLUSA claims where "[e]ssentially, plaintiff alleges that defendants induced him to purchase the Variable Annuity by failing to disclose the penalty withdrawal fee and the effect it has on the underlying value of the policy").

The reasoning of these cases applies with equal force here. Plaintiff contends that Vanguard misrepresented how quickly investors would be able to obtain proceeds upon redemption, i.e., a sale. He also claims that Vanguard's misrepresentation affected the value of the mutual fund shares because investors allegedly received one less day of interest than they expected. Complaint at ¶¶ 2, 7. This alleged fraud thus concerns both the value of investors' Vanguard holdings and the terms on which they could sell them. Under Dabit, Falkowski, and

Beckett, therefore, plaintiff's claims are preempted.

### 3. The Alleged Fraud Is Also "In Connection With" Investors' Purchases of Vanguard Funds

In addition to alleging a fraud "in connection with" investors' sales of Vanguard fund shares, plaintiff alleges a fraud in connection with the initial purchase of those shares. Plaintiff alleges that Vanguard made misrepresentations concerning its wire services to "induce" investors into taking advantage of its services. Complaint ¶29. He further claims that Vanguard "knew the falsity of the representation, but suggested that next–day wire transfers were available *in order to attract business*." Id. ¶30 (emphasis added). Thus, plaintiff alleges that Vanguard fraudulently induced investors to purchase Vanguard funds by making misstatements about its wire services. This alleged fraud plainly is "in connection with" the purchase of Vanguard fund shares. See In re Am. Mut. Funds Fees Litig., No. CV-04-5593 GAFRNBX, 2005 WL 3989803, at *7 (C.D. Cal. Dec. 16, 2005) (holding that claims for breach of fiduciary duty, unfair competition, and unjust enrichment based on defendants' alleged scheme "to induce investors to purchase shares in American Funds mutual funds" were preempted by SLUSA); Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377, 383 (E.D.N.Y. 2002) ("Courts have routinely found that the 'in connection with' element was satisfied when a plaintiff alleges that she or he purchased a security after relying on a misrepresentation as to its value.").

### G. All of Plaintiff's Claims Are Preempted.

Plaintiff cannot avoid SLUSA preemption by claiming that certain of his causes of action do not require proof of a misrepresentation. As the Ninth Circuit recently explained, SLUSA's "preemptive force cannot be circumvented by artful drafting." U.S. Mortgage, 2007 WL 2027370, at *7 (quoting Rowinski v, Solomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005)). Rather, "under SLUSA, the Court must look beyond the face of the complaint to analyze the substance of the allegations." Beckett, 2006 WL 3249189, at *3. Thus, courts routinely dismiss claims which are based upon misrepresentations – even when plaintiffs try to disguise them as claims sounding in consumer protection, breach of contract, or conversion. See, e.g., Patenaude, 290 F.3d at 1025 (violation of Cal. Bus. & Prof. Code §§ 17200 & 17500); Beckett,

1  2006 WL 3249189, at *5 (breach of contract, breach of fiduciary duty, unjust enrichment);

2  Kenneth Rothschild, 199 F. Supp. 2d at 1000 (Cal. Bus. & Prof. Code § 17200); Lasley v. New

3  England Variable Life Ins. Co., 126 F. Supp. 2d 1236 (N.D. Cal. 1999) (breach of contract);

4  Instituto de Prevision Militar v. Merrill Lynch & Co., Inc.,

5  No. 05–22721-CIV-MOORE/GARBER, 2007 WL 1239252, at *6 (S.D. Fla. Apr. 27, 2007)

6  (conversion).

7  Here, the substance of each of plaintiff's claims is identical: each concerns Vanguard's

8  alleged misrepresentations regarding when redemption proceeds would be received by investors.

9  Indeed, under each count of the Complaint, plaintiff contends generally that Vanguard's

10  representations were untrue and/or that, as a result of its misrepresentations, Vanguard obtained

11  one additional day of interest while investors lost out on such interest. Accordingly, all of

12  plaintiff's claims are preempted by SLUSA.[4]

13  **IV.     CONCLUSION**

14  As demonstrated above, plaintiff's entire Complaint fails under SLUSA. Plaintiff

15  purports to bring a class action, based upon state law, alleging misrepresentations in connection

16  with both the purchase and sale of Vanguard fund shares. Under recent United States Supreme

17  Court and Ninth Circuit law, plaintiff's Complaint is preempted by SLUSA.

---

[4] SLUSA preemption is hardly the only legal deficiency of the Complaint. First, Plaintiff's claims for deceit, fraud, negligent misrepresentation, and violation of Cal. Bus. & Prof. Code § 17500 also fail because plaintiff has not adequately pleaded an actionable misrepresentation. As demonstrated above, the Prospectus accurately describes the wire redemption process and the confirmation message simply does not apply to an investor (like Hornstein) who makes a redemption request over the weekend. Second, plaintiff's claims for breach of contract and promissory estoppel fail because Hornstein has failed to identify any contract or other promise that Vanguard breached. Third, plaintiff's claim for violation of Cal. Bus. & Prof. Code § 17200 fails because that statute does not apply to cases involving securities transactions. See, e.g., Scognamillo v. Credit Suisse First Boston LLC, No. 03–2061, 2005 WL 2045807, at *12 (N.D. Cal. Aug. 25, 2005). Finally, plaintiff's conversion claim fails because he has not alleged any basis for claiming an "immediate right to possession" of the redemption proceeds on the Monday after his redemption request. Nor has plaintiff identified any specific, identifiable sum to which he was entitled.

For Defendant THE VANGUARD GROUP, INC.

Dated: September 4, 2007

 /s/ Michael S. Doluisio
Michael S. Doluisio
Scott A. Thompson
DECHERT LLP
2929 Arch St., Cira Centre
Philadelphia, PA 19104
Telephone: (215) 994–4000
Facsimile: (215) 6552325

Connie E. Merriett, State Bar No. 223274
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040
Telephone: (650 ) 813–4800
Facsimile: (650) 813–4848

### **FILER'S ATTESTATION**

I, Connie E. Merriett, attest pursuant to General Order No. 45 that concurrence in the filing of this document has been obtained from the other signatories.

Dated: September 4, 2007        /s/Connie E. Merriett
                                CONNIE E. MERRIET